UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT H. PIERCE, and
LORRAINE PIERCE,

                  Plaintiffs,

v.                                       **DECISION AND ORDER**
                                                 04-CV-469S

LAFARGE NORTH AMERICA, INC.,

                  Defendant.

     1.     In this action, Plaintiff Robert H. Pierce alleges that Defendant LaFarge North America, Inc. ("LaFarge") failed to adequately warn him about the dangers associated with concrete use upon delivering a large order of the material to his home, and as a result, he sustained severe burns to his legs. Plaintiffs assert claims for negligence based on failure to warn and, on behalf of Lorraine Pierce,[1] for loss of consortium.[2]

     2.     Plaintiffs commenced this action on March 19, 2004, by filing a Summons and Complaint in New York State Supreme Court, Niagara County. Defendant removed the case to the United States District Court for the Western District of New York on June 23, 2004.[3] On August 30, 2006, Defendant filed the instant Motion for Summary

---

[1] Plaintiff Lorraine Pierce's claims are derivative. Accordingly, any reference to "Plaintiff" in the singular relates to Robert H. Pierce.

[2] Plaintiffs' complaint also claims that the concrete delivered by LaFarge was defective. However, Plaintiffs offered no evidence in response to Defendant's Motion for Summary Judgment with respect to the defective nature of the concrete, and during oral argument before this Court on October 30, 2006, Plaintiffs' counsel confirmed that they had abandoned the defective product claim. Accordingly, this Court will limit its analysis to Plaintiffs' failure to warn claim.

[3] According to LaFarge, this Court's subject matter jurisdiction is predicated on the diversity of the parties and the amount in controversy. See 28 U.S.C. § 1332(a)(1). As set forth in Defendant's uncontested Notice of Removal, Plaintiffs are citizens and residents of the State of New York, Defendant is incorporated in the State of Maryland with its principal place of business in the State of Virginia, and the amount in controversy exceeds $75,000. (Not. of Rem., ¶¶ 3-5). Because this matter was originally filed in New York State Court, Plaintiffs' Summons and Complaint did not specify the amount of damages sought. However, Defendant removed this action within 30 days of receiving Plaintiffs' supplemental demand for relief, which states that they have suffered damages in the amount of Two Million dollars. (Not. of Rem., ¶ 2 & Exh. B).

Judgment.[4]  After full briefing, this Court heard oral argument on October 30, 2006, and reserved decision at that time.  For the reasons stated below, Defendant's Motion for Summary Judgment is denied.

3.	The following facts are undisputed for purposes of the instant motion, except where indicated.  At approximately 9:30 a.m. on June 26, 2002, Mr. Ross Beecher, a LaFarge employee, delivered seven and ½ yards of fresh concrete to Plaintiffs' residence. (Def.'s State., p. 1; Pl.'s State., p. 1).  Plaintiff intended to replace the 22 X 24 foot concrete garage floor with some assistance from his grandson.  (Def.'s State., p. 1; Briandi Aff., ¶ 11; Pl.'s State., p. 1).  Prior to the delivery of the concrete, Plaintiff had broken up and removed the existing concrete floor, and placed stone, 2 X 4 foot boards, and reinforced rods down to frame the new floor.  (Def.'s State., p. 1; Briandi Aff., Ex. G, p. 1).  That morning, Mr. Beecher poured the fresh cement onto the floor over the reinforced rods and stones, which were already in place.  (Def.'s State., p. 2).

According to Defendants, Mr. Beecher observed that Plaintiff was wearing sneakers and no gloves and so he warned him, "Make sure you wash that stuff off[;  i]t'll burn you," to which Plaintiff replied, "I've been doing [this] for 50 years," and "I know what the hell I'm doing." (Def.'s State., p. 2; Briandi Aff., Exh. I, p. 28).  Defendant contends that thereafter, Mr. Beecher saw Plaintiff walking around in the concrete, and warned him, "You really shouldn't do that," "Get that stuff off as fast as you can," and "It will burn you."  (Def.'s State., p. 2; Briandi Aff., Exh. I, p. 53).  Again, according to Defendant, Plaintiff told Mr.

---

[4] In support of its Motion, Defendant filed an Affidavit by Jody Briandi, Esq., with numerous exhibits, a Memorandum of Law, a Statement of Material Facts Pursuant to Local Rule 56, and an Attorney's Reply Affidavit in Further Support of Motion for Summary Judgment.  Plaintiffs filed an Opposing Affirmation by Craig H. Barhardt, Esq., with numerous exhibits, and a Counter Statement of Material Facts pursuant to Local Rule 56.1 in opposition to Defendant's Motion.

2

Beecher, "I've been doing this all my life," and "I know what I am doing." (Def.'s State., p. 2; Briandi Aff., Exh. I, p. 53).

After pouring the concrete, Mr. Beecher washed out the truck, and presented Mrs. Pierce with the delivery ticket, which she signed and retained. (Def.'s State., p. 2; Briandi Aff., ¶¶ 12 -13, Exh. D). The following warning appears on the upper left corner of the delivery ticket:

> WARNING
> WET CONCRETE CAN CAUSE INJURY TO THE EYES AND SKIN IRRITATION WITH POSSIBLE BURNS.  <u>TAKE THESE PRECAUTIONS</u>:
> 1. Avoid all contact with eyes.
> 2. In case of eye contact FLUSH thoroughly with water.
> 3. Avoid skin contact whenever possible and wash exposed skin promptly with water.
> 4. Wear rubber boots, gloves and appropriate eye protection.
> 5. If irritation persists, get medical attention promptly.
> 6. Keep children away.

(Briandi Aff., Exh. D). According to Defendant, Mr. Beecher verbally warned Mrs. Pierce that Plaintiff should wash the concrete from his body because it would burn him. (Def.'s State., p. 2; Briandi Aff., Exh. I, p. 59). At her deposition, Mrs. Pierce testified that: (1) she did not read the written warning until a couple of months later; and (2) she did not recall having a conversation with Mr. Beecher on the morning of the delivery. (Pl.'s State., p. 2; Briandi Aff., Exh. J, pp. 14-15). Plaintiff contends that Mr. Beecher never brought the written warning to his attention, nor did he instruct him as to how to use the concrete. (Pl.'s State., p. 2; Briandi Aff., Exh. H, pp. 61, 63).

After Mr. Beecher's departure, Plaintiff, who wearing work boots, denim jeans, gloves, and a shirt, worked with the wet concrete, periodically kneeling in the material as he did so. (Def.'s State., pp. 2-3). After approximately one hour, Plaintiff began to feel a

slight burning in his legs, went inside, removed his pants, noticed that both of his knees appeared leathery, and took a shower.  (Def.'s State., pp. 2-3).  Plaintiff was thereafter taken to St. Mary's Hospital and then transferred to Erie County Medical Center, where he was treated for severe burns on both legs.  (Def.'s State., p. 3; Bernhardt Aff., Exh. E).

Prior to his injury, Plaintiff had a long history of working with fresh concrete.  (Def.'s State., p. 1).  Specifically, during his seven year employment as a maintenance worker for Bell Aircraft ("Bell"), Plaintiff repaired the concrete walls and floors of the cells where the rockets were tested.  (Def.'s State., pp. 1-2, Briandi Aff., ¶ 11).  In this capacity, he poured concrete pads one or two times a week for the entire duration of his employment with Bell.  (Def.'s State., pp. 1-2, Briandi Aff., ¶ 11).  When working with concrete at Bell, Plaintiff would wear rubber boots that went at least halfway to his knees.  (Briandi Aff., ¶ 11).  After working at Bell, Plaintiff was hired by General Motors to pour concrete pads for the facility parking lot.  (Def.'s State., p. 2).  During his 37 year employment at General Motors, Plaintiff routinely wore rubberized boots and sometimes gloves when he worked with concrete, and he would wash his hands off after working with the material.  (Def.'s State., p. 2, Briandi Aff., ¶ 11).

At his deposition, Plaintiff testified that no one ever talked to him about the burn properties of concrete during the years that he worked at Bell.  (Briandi Aff., Exh. H, p. 32).  However, Plaintiff testified that when he worked at General Motors, his co-workers made statements about being burned by concrete.  Specifically, Plaintiff testified as follows:

> Q. During the years you worked at General Motors, did you know that exposure to concrete could cause burns to the skin?
> A. You hear people talk, you know.
> Some people say, "Hey, well, I got burnt."
> Some people say, "Well, hey, I got -- concrete burnt me," you know.
> And I said, "Well, that's never happened to me."

4

(Briandi Aff., Exh. H, p. 39, lines 8-16).  Nonetheless, Plaintiff testified that on June 26, 2002, he did not know that exposure to fresh concrete could cause burns to the skin.  (Pl.'s State., p. 1; Briandi Aff., Exh. H, p. 43).

      4.      Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court in deciding summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

Once a moving party has met its initial burden to demonstrate that no genuine issue as to any material fact exists, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Rather,

the nonmovant "must come forward with evidence sufficient to allow a reasonable jury to find in [his or her] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (internal citations omitted). "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." Zdziebloski v. Town of Greenbush, 336 F. Supp. 2d 194, 201 (N.D.N.Y. 2004) (citing Carey v. Crecenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

     5.     As previously set forth herein, Plaintiff's primary claim is that Defendant failed to warn him about the caustic properties of fresh concrete. To prevail on a failure to warn claim, a plaintiff must show: (1) that the manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm. Colon v. Bic, USA, 199 F. Supp. 2d 53, 84 (S.D.N.Y. 2001). Thus, even when a product is the proximate cause of a plaintiff's injuries, a defendant manufacturer will incur no liability on an inadequate warning claim if he or she has no duty to warn in the first place. See Donald v. Shin Fu Co. of America, No. 99-CV-6397 (ARR), 2002 WL 32068351, at *8 (E.D.N.Y. Sept. 4, 2002).

Under New York law, a supplier of a product has no duty to warn, and therefore, no liability for failure to warn, where "'the user is fully aware of the of the nature of the product and its dangers,'" in other words, when he or she is a "knowledgeable user" of the product. Case v. Paul Troester Maschinefabrik, 139 F. Supp. 2d 428, 435 (W.D.N.Y. 2001)(quoting Billar v. Minnesota Mining & Mfg, Co., 623 F.2d 240, 243 (2d Cir. 1980)). In essence, the "knowledgeable user" doctrine absolves a manufacturer of liability on a failure to warn theory "where a user knows or has reason to know of the dangerous

propensities of the product independent of the information supplied to him by the manufacturer or distributor." Case, 139 F. Supp. 2d at 435 (internal citations omitted).

The "knowledgeable user" exception rests on the assumption that a supplier or manufacturer has a greater knowledge of its product and a superior ability to detect dangers than its consumers and is therefore in a better position to prevent accidents through adequate warnings regarding those dangers. Donald, 2002 WL 32068351, at *8; see also Barban v. Rheem Textile Systems, No. 01-CV-8475 (ILG), 2005 WL 387660, at * 9 (E.D.N.Y. Feb. 11, 2005). When, however, the user of a product is actually aware of the danger the product poses, this assumption falls away. Barban, 2005 WL 387660, at * 9. Stated differently, "when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning." Liriano v. Hobart Corp., 92 N.Y.2d 232, 242 (1998)).

Generally speaking, courts consistently apply the "knowledgeable user" exception in those cases involving a professional or expert plaintiff who is experienced with the product in question, or where the claim relates to a tool of his or her trade. See Barban, 2005 WL 387660, at * 9 (holding that the defendant manufacturers of a laundry press machine owed no duty to warn plaintiff -- a professional dry cleaner who had worked on the machine -- of the dangers of the laundry press); see also Donald, 2002 WL 32068351, at *8 (holding that the plaintiff mechanic was a knowledgeable user of fork lifts and therefore, the defendant fork lift manufacturer had no duty under New York law to warn him that the jack could collapse); Travelers Ins. Co. v. Federal Pacific Elec. Co,, 211 A.D.2d 40, 44 (1st Dep't 1995) (holding that the "knowledgeable user" exception applied to the plaintiff electrician's claim, which arose from an electrical fire); Bigness v. Powell

Electronics, Inc., 209 A.D.2d 984, 985 (4th Dep't 1994) (holding that the lower court properly granted summary judgment in favor of the defendant assembler and manufacturer of a connector plug, because the plaintiff electronics technician was a knowledgeable user of the product). Given Plaintiff's extensive experience working with concrete, it appears that he fits the criterion for eligibility for the exception. However, this Court's inquiry regarding Defendant's duty to warn does not end there.

New York law is clear that a plaintiff's mere membership in profession is not enough to trigger the "knowledgeable user" exception; rather, to absolve a defendant manufacturer of a duty to warn, the plaintiff must have "actual knowledge" of the "specific hazard" that caused the injury. Lirano, 92 N.Y.2d at 241. That is, a user's knowledge of the danger presented by the problem cannot be general, but must be highly particular. See, e.g., Jiminez v. Dries & Krump Manufacturing Co., Inc., 736 F.2d 51, 55-56 (2d Cir. 1984) (holding that summary judgment on the issue of duty to warn was inappropriate where the plaintiff employee admitted that he knew that placing his hand in a machine that had been intentionally activated was dangerous, but did not admit that he knew that the machine could unintentionally recycle and cause him injury). Moreover, the user must be aware of the seriousness of the harm he faces in using the particular product. Billar, 623 F.2d at 244.

"Mere knowledge that a product is dangerous is not sufficient. . . . For example, a plaintiff who knew of the possibility of injury but not the potential for severe injury [does] not qualify for the exception." Donald, 2002 WL 32068351, at *9. "When the plaintiff's actual knowledge of the severity or quality of the danger he or she faces is [at issue], the question is more properly addressed to the jury." Id.; see also Billar, 623 F.2d at 244, 246

(assuming that the plaintiff employee could fall within the knowledgeable user exception, "New York law would allow the jury to decide whether [she] was sufficiently aware of the danger to exempt the supplier from its duty to warn.")

6.      On the record before it, this Court finds that there is a genuine issue of material fact as to whether Plaintiff was aware of the specific danger posed by concrete and the severity of that danger. The record reflects that during his many years working with concrete at Bell and General Motors, Plaintiff routinely wore rubber boots and occasionally gloves when using the material. However, these facts, standing alone, do not compel the conclusion that Plaintiff knew that exposure to concrete could cause severe burns to the skin, particularly given his testimony to the contrary. As previously noted herein, Plaintiff explicitly testified that he had never been trained regarding the caustic properties of concrete and on the date in question, he did not know that fresh concrete could burn the skin. Defendant argues that Plaintiff's statements are belied by his testimony that during his employment at General Motors, he overheard his co-workers talking about being burned by concrete. However, on a motion for summary judgment, it is not the function of this Court to weigh Plaintiff's conflicting testimony to determine whether he knew that fresh concrete could burn his skin, and how severe those burns could be. See Anderson, 477 U.S. at 249. Rather, the credibility of Plaintiff's testimony regarding what he knew or did not know about concrete on the day of his injury is best left to a jury.

Drawing all reasonable inferences in Plaintiff's favor, as it must, this Court finds that a genuine issue of material fact exists as to whether Plaintiff was a knowledgeable user of

concrete on June 26, 2002.[5]  Accordingly, Defendant's Motion for Summary Judgment, which rests almost exclusively on the knowledgeable user doctrine, must be denied.

IT IS HEREBY ORDERED, that Plaintiff's defective product claim is dismissed for the reasons set forth in this Decision.

FURTHER, that Defendant's Motion for Summary Judgment (Docket No. 28) is DENIED.

SO ORDERED.

Dated:	February 16, 2007
	Buffalo, New York	/s/William M. Skretny
	                                    	WILLIAM M. SKRETNY
	                                    	United States District Judge

---

[5]In Tripolone v. Genova Products, Inc., No. 95-CV-1018, 1997 WL 583120, at *7 (N.D.N.Y. Sept. 3, 1997), a case upon which Defendant relies almost exclusively, the record established that the plaintiff -- an amateur plumber who injured his eye when the PVC toilet flange he was installing splintered -- was aware of the specific risks associated with the flange designed and manufactured by Defendant.  In finding that plaintiff was a knowledgeable user of PVC toilet flanges, the Tripolone Court noted the following undisputed evidence regarding his experience with plumbing and applicable safety precautions, and, in particular, PVC and flanges.

> Plaintiff deposed that he learned the plumbing trade from watching and supervising other plumbers in the 1970s. . . . He had been doing his own rough and finish plumbing intermittently between 1975 or '76 until approximately 1984. From that point on, he did his own plumbing exclusively. . . . *He had worked with PVC plumbing parts for 15 to 20 years prior to the accident. . . . . He was aware PVC could break*. . . . He had two or three pairs of safety goggles in his truck at the time of the accident. . . . . As part of his formal construction-related education[,] he had been taught about safety and safety goggles. . . . . He apparently did wear goggles for some plumbing jobs, such as soldering. . . . . He installed toilet flanges as frequently as 12 to 15 times a year, . . . *and he had installed the particular model flange at issue "maybe twenty times[."]* . . . *He had seen PVC flange plugs break in the past*. . . .

Id. (emphasis added).  Significantly, the Tripolone Court did not rely primarily on plaintiff's plumbing experience in concluding that he was a knowledgeable user, but focused on his knowledge of the particular product and the risks associated with its use.

In the instant case, although Plaintiff had years of experience using fresh concrete, there is no evidence that he had ever seen concrete burn anyone, or that he was educated regarding the caustic properties of concrete. As previously noted, Plaintiff testified that on the date of his injury, that he did not know that exposure to fresh concrete could burn the skin, and that he had never been trained that concrete presented this specific danger. Whether Plaintiff's testimony is credible is not an issue properly decided on a motion for summary judgment. Accordingly, this Court finds that Tripolone is distinguishable from the instant case, and does not compel the conclusion that Plaintiff was a knowledgeable user of concrete.